UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

**F I L E D**

DEC 0 3 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 50063 |
| | ) | Judge Frederick J. Kapala |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| CHRISTOPHER A. JANSEN | ) | Code, Section 1343; Title 26, United |
| | ) | States Code, Section 7201 |

## COUNT ONE

The UNITED STATES ATTORNEY charges:

1.    At times material to this information:

    a.    Defendant CHRISTOPHER A. JANSEN was a resident of St. Charles, Illinois.

    b.    Baytree Investors, Inc. (hereafter referred to as "Baytree") was an Illinois corporation originally incorporated in 1907. The corporation's original name was W.A. Wieboldt & Co. , but in 1928, the name was changed to Wieboldt Stores, Inc., and in 1993 the name was changed to Baytree Investor's, Inc.   Since 1993, Baytree has held itself out as being in the merchant banking business. CHRISTOPHER A. JANSEN was the President and an owner of Baytree.

    c.    Talcott Financial Corporation (hereafter "Talcott") was incorporated in Illinois by CHRISTOPHER A. JANSEN in 1997. The Illinois Secretary of State dissolved the corporation in 1999. JANSEN caused a bank account to be opened by Talcott in 1997. JANSEN was an authorized signatory on the account and used the account for personal and

other business matters before and after the dissolution of Talcott. JANSEN held himself out as the President of Talcott before and after the dissolution.

      d.     DFCTC Holdings, Inc. (hereafter "DFCTC Holdings") was a Delaware corporation incorporated at the direction of CHRISTOPHER A. JANSEN on December 31, 2001. JANSEN acted as DFCTC Holdings' corporate secretary and directed its activities, including the receipt and disbursement of all funds from its bank accounts.

      e.     DFC Transportation Company, Inc. (hereafter "DFC Transportation") was a Delaware corporation that was in the trucking business. It was purchased by DFCTC Holdings on January 4, 2002. After the purchase by DFCTC Holdings, CHRISTOPHER A. JANSEN acted as DFC Transportation's corporate secretary and directed its activities, including hiring and supervising certain officers and employees, and determining their compensation.

      f.     Delaware corporate law imposes fiduciary duties of good faith, due care, and loyalty on officers of Delaware corporations. Among other things, these fiduciary duties required CHRISTOPHER A. JANSEN to refrain from using his position of trust and confidence with DFC Transportation and DFCTC Holdings to further his personal interests without full and fair disclosure to the corporations, to refrain from engaging in personal transactions with either corporation without his full and fair disclosure of the transactions and his personal interests to the corporation, to act solely in the best interests of each corporation in corporate transactions, and to avoid any legal violations by either of the corporations.

2

2.     From not later than November 2001, and continuing through at least December 2002, at Huntley, in the Northern District of Illinois, Western Division, and elsewhere,

CHRISTOPHER A. JANSEN,

defendant herein, devised and intended to devise a scheme to defraud and to obtain money from DFC Transportation and DFCTC Holdings, by means of materially false and fraudulent pretenses, representations and omissions.

3.     It was the object of the scheme to defraud for CHRISTOPHER A. JANSEN to use DFCTC Holdings to purchase and gain control of DFC Transportation for the purpose of misappropriating and converting its trade receivables and other corporate assets to his own benefit and to the benefit of others.

4.     It was a part of the scheme to defraud that after defendant JANSEN learned that DFC Transportation was for sale, he began negotiations to purchase DFC Transportation and caused the creation of DFCTC Holdings to be the corporation which would act as the purchaser of DFC Transportation.

5.     It was further a part of the scheme to defraud that as a part of the negotiations for the purchase of DFC Transportation, the defendant JANSEN learned that DFC Transportation had hundreds of thousands of dollars of trade receivables and other assets which could be used as collateral to borrow money.  Prior to the closing of the purchase of DFC Transportation, the defendant arranged to use DFC Transportation's trade receivables as collateral to borrow money from a bank.

3

6.    It was a further part of the scheme to defraud that defendant JANSEN offered DFCTC Holdings stock to certain officers and employees of DFC Transportation as an incentive to induce them to continue their employment with DFC Transportation. Several officers and employees of DFC Transportation accepted the defendants' offer of DFCTC Holdings stock and remained at work for DFC Transportation after it was purchased by DFCTC Holdings.

7.    It was further part of the scheme to defraud that defendant JANSEN issued DFCTC Holdings stock to certain other individuals for the purpose of repaying those individuals for investments they had made in previous acquisitions, and attempted acquisitions, of other businesses. These individuals paid nothing to DFCTC for the stock. DFCTC Holdings had no responsibility or liability to any of these individuals. Any responsibility or liability to any of these individuals was owed by defendant JANSEN. As an officer of DFCTC Holdings, defendant JANSEN, had a fiduciary duty to refrain from using his position of trust and confidence with DFCTC Holdings to further his personal interests without full and fair disclosure to the corporations to refrain from engaging in personal transactions with DFCTC Holdings without his full and fair disclosure of his personal interests and the transactions to the corporation, and to act solely in the best interests of the corporation as to corporate transactions.

8.    It was further part of the scheme to defraud that the defendants used part of the money borrowed from the bank to make the payments required for the closing of the

4

purchase of DFC Transportation by DFCTC Holdings.  For the purchase of DFC Transportation, the defendant invested nothing in DFCTC Holdings.  The loan proceeds were the sole source of funds for the payments made to close the purchase of DFC Transportation by DFCTC Holdings.

9.     It was a further part of the scheme to defraud that at the time of closing, without the authorization of DFC Transportation, the defendant caused DFC Transportation to borrow more money from the bank than was needed to close the purchase of DFC Transportation.  After the closing, the defendant continued from time to time, without the authorization of DFC Transportation, to cause DFC Transportation to borrow more money by using more of its trade receivables as collateral.  As an officer of DFC Transportation, CHRISTOPHER A. JANSEN, had a fiduciary duty to refrain from using his position of trust and confidence with DFCTC Holdings to further his personal interests without full and fair disclosure to the corporation, to act solely in the best interests of the corporation in corporate transactions in which he had no personal interest, and to act solely in the best interests of the corporation as to corporate transactions.

10.     It was a further part of the scheme to defraud that without the authorization of DFC Transportation or DFCTC Holdings, and by repeatedly abusing his authority and fiduciary obligation as an officer of both corporations, the defendants caused DFC Transportation to transfer hundreds of thousands of borrowed funds to DFCTC Holdings.

11.     It was a further part of the scheme to defraud that without the authorization of DFCTC Holdings, and by repeatedly abusing his authority and fiduciary obligation as an officer of the corporation,  JANSEN transferred hundreds of thousands of dollars of the money received from DFC Transportation to himself and others for his personal benefit and for the benefit of others.

12.     It was further part of the scheme to defraud that CHRISTOPHER A. JANSEN caused the misappropriation of so much DFC Transportation money that DFC Transportation became unable to pay its liabilities in the ordinary course of its business, causing DFC Transportation to go out of business in approximately September 2002.

13.     It was a further part of the scheme to defraud that in an effort to conceal the scheme to defraud, the defendant, CHRISTOPHER A. JANSEN, exercised control over significant aspects of the business of DFC Transportation, including which of its liabilities were paid and when they were paid.

14.     It was a further part of the scheme to defraud that CHRISPTOPHER A. JANSEN caused DFCTC Holdings to violate the law by failing to file informational types of returns regarding distributions to him and for his benefit, in violation of his fiduciary duty of good faith to avoid violations of the law by DFCTC Holdings.

6

15.     On or about March 22, 2002, at Huntley, in the Northern District of Illinois, Western Division, at St. Charles, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHRISTOPHER A. JANSEN,

defendant herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, namely a wire transfer of $250,000 from Transportation Alliance Bank in Ogden, Utah to Valley Bank in St. Charles, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The UNITED STATES ATTORNEY further charges:

1.     Paragraphs 1b, 1c, and 1d of Count One of this Information are re-alleged and incorporated herein as if fully set forth.

2.     During the calendar year 2002, defendant CHRISTOPHER A. JANSEN was a resident of St. Charles, Illinois, and had a taxable income of, at least, $1,168,000.00.

3.     Upon said taxable income, defendant CHRISTOPHER A. JANSEN owed to the United States of America income tax of, at least, approximately $436,000.00.

4.     By reason of this income, defendant CHRISTOPHER A. JANSEN was required by law, following the close of the calendar year 2002, and on or before April 15, 2003, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

5.     Throughout calendar year 2002, continuing to on or about April 15, 2003, in the Northern District of Illinois,

CHRISTOPHER A. JANSEN,

defendant herein, well knowing all of the foregoing facts, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the 2002 calendar year by:

8

a.    using the name of a dissolved corporation, Talcott Financial Corporation, for his personal financial transactions in order to avoid making records which would have exposed that he was receiving taxable income;

b.    using the bank account of Talcott Financial Corporation for receipt of his personal income and disbursement of his personal expenditures, none of which were related to any business of Talcott, and were solely personal transactions of CHRISTOPHER A. JANSEN;

c.    handling the business of Baytree Investors, Inc. in such a way as to avoid the reporting of distributions of taxable income to CHRISTOPHER A. JANSEN on informational forms such as 1099's to the IRS;

d.    handling the business of DFCTC Holdings, Inc. in such a way as to avoid the reporting of distributions of taxable income to CHRISTOPHER A. JANSEN to the IRS on informational forms such as 1099's; and

e.    failing to pay to the Internal Revenue Service the full income tax due and owing;

In violation of Title 26, United States Code, Section 7201.


_____
UNITED STATES ATTORNEY

9